UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| JULIE A. SU, Acting Secretary of Labor, United States Department of Labor, | : | **COMPLAINT** |
| Plaintiff, | : | Civil Action No. 24-cv-8720 |
| v. | : | |
| FRIENDS FOR LIFE HOME CARE SERVICES LLC d/b/a FRIENDS FOR LIFE HOMECARE, FRIENDS FOR LIFE HOME CARE OF MERRICK LLC d/b/a FRIENDS FOR LIFE HOMECARE, FRIENDS FOR LIFE HOME CARE SERVICES OF BABYLON, LLC d/b/a FRIENDS FOR LIFE HOMECARE, FRIENDS FOR LIFE MEDICAID CONSULTANTS, LLC d/b/a FRIENDS FOR LIFE HOMECARE, MICHAEL RECCO, Individually, and AMY RECCO, Individually, | : | |
| Defendants. | : | |

1. From at least October 9, 2022 through at least July 2023 and likely to the present (the "relevant time period"), Defendants, who operate a home care agency as a single employer, have broken the law by misclassifying their home care aides ("aides") as independent contractors in an attempt to evade the overtime and record keeping requirements of the Fair Labor Standards Act of 1938, as amended (29 U.S.C. § 201, et seq.) (the "Act" or the "FLSA"). Defendants' aides provide services including meal preparation, hygiene assistance, errands, household cleaning, and elder care to clients in New York City and Long Island. Some of Defendants' clients require around-the-clock care. Accordingly, aides often work as many as seven 24-hour shifts in a week. Despite these long hours, Defendants systematically fail to pay their employees overtime premiums for hours worked in excess of 40 per week. In furtherance of their violations of the Act, Defendants fail to keep complete and accurate records of the hours aides work during 24-hour

shifts.

2. Plaintiff, Julie A. Su, Acting Secretary of Labor, United States Department of Labor (the "Acting Secretary"), by and through undersigned counsel, brings this action pursuant to Section 16(c) and Section 17 of the FLSA, alleging that Defendants violated Sections 7, 11(c), 15(a)(2), and 15(a)(5) of the Act, to recover back wages and liquidated damages for employees; to enjoin acts and practices that violate the provisions of the FLSA; and to obtain other appropriate relief.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to Section 17 of the FLSA, 29 U.S.C. § 217, and 28 U.S.C. §§ 1331 and 1345.

4. Venue for this action lies in the United States District Court for the Eastern District of New York because a substantial part of the events or omissions giving rise to the claims occurred in this District. 28 U.S.C. § 1391(b)(2).

## FACTUAL ALLEGATIONS

### THE PARTIES

*Plaintiff*

5. Plaintiff, JULIE A. SU, Acting Secretary of Labor, United States Department of Labor, is vested with authority to file suit to restrain violations of the FLSA and recover back wages and liquidated damages, and is the proper plaintiff for this action.

*The Corporate Defendants*

6. Defendant FRIENDS FOR LIFE HOME CARE SERVICES LLC doing business as FRIENDS FOR LIFE HOMECARE is a company organized under the laws of the State of New York, having its principal place of business at 5501 Merrick Road, Massapequa, New York 11758.

7. Defendant FRIENDS FOR LIFE HOME CARE OF MERRICK LLC doing business as FRIENDS FOR LIFE HOMECARE is a company organized under the laws of the State of New York, having its principal place of business at 4 Merrick Avenue, Merrick, New York, 11566.

8. Defendant FRIENDS FOR LIFE HOME CARE SERVICES OF BABYLON, LLC doing business as FRIENDS FOR LIFE HOMECARE is a company organized under the laws of the State of New York, having its principal place of business at 99 Deer Park Avenue, Babylon, New York 11702.

9. Defendant FRIENDS FOR LIFE MEDICAID CONSULTANTS, LLC doing business as FRIENDS FOR LIFE HOMECARE is a company organized under the laws of the State of New York, having its principal place of business at 1045B Park Boulevard, Massapequa Park, New York 11762.

10. These four companies, collectively, are the “Corporate Defendants.”

11. Defendants operate a home care agency under the brand name Friends for Life Homecare.

*The Individual Defendants*

12. Defendant MICHAEL RECCO, an individual, owns 50% of Friends for Life Home Care Services LLC.

13. Defendant Michael Recco owns 50% of Friends for Life Home Care of Merrick LLC.

14. Defendant Michael Recco owns 50% of Friends for Life Home Care Services of Babylon, LLC.

15. Defendant Michael Recco owns 50% of Friends for Life Medicaid Consultants,

LLC.

16. Defendant Michael Recco is and was during the relevant time period the Chief Executive Officer and President of Friends for Life Homecare.

17. Defendant Michael Recco resides in Massapequa Park, New York, within the jurisdiction of this Court.

18. Defendant AMY RECCO, an individual, owns 50% of Friends for Life Home Care Services LLC.

19. Defendant Amy Recco owns 50% of Friends for Life Home Care of Merrick LLC.

20. Defendant Amy Recco owns 50% of Friends for Life Home Care Services of Babylon, LLC.

21. Defendant Amy Recco owns 50% of Friends for Life Medicaid Consultants, LLC.

22. Defendant Amy Recco is married to Defendant Michael Recco.

23. Defendant Amy Recco is and was during the relevant time period the Chief Operating Officer and Vice President of Friends for Life Homecare.

24. Defendant Amy Recco resides in Massapequa Park, New York, within the jurisdiction of this Court.

## THE DEFENDANTS OPERATE AS A SINGLE, INTEGRATED EMPLOYER

### *The Corporate Defendants Jointly and Collectively Employ Friends for Life Homecare's Employees*

25. Defendants operate as a single employer and have done so throughout the relevant time period.

26. The Corporate Defendants jointly operate a home care agency under one unified brand – Friends for Life Homecare.

27. The Corporate Defendants have unified operations.

28. Defendants hold Friends for Life Homecare out as a single business with four locations.

29. For example, in an October 24, 2024 post, the Friends for Life Instagram states, "We love when our entire team from all four of our offices get together for special events."

30. Defendants maintain a single website for Friends for Life Homecare, https://friendsforlifeny.com/, and have done so throughout the relevant time period.

31. The Friends for Life Homecare website, under a page titled "Contact," lists four locations, each with the address of one of the Corporate Defendants.

32. Defendants maintain a single Instagram account for Friends for Life Homecare with the handle @friendsforlifehomecare, and have done so throughout the relevant time period.

33. As described herein, a common management team, including Defendants Michael and Amy Recco, are in common control of the Corporate Defendants.

34. As described herein, the Corporate Defendants are under the common ownership and financial control of Defendants Michael and Amy Recco.

35. Together, Defendants employed the same employees out of multiple locations during the relevant time period.

36. During the relevant time period, Defendants subjected employees at all of the Friends for Life Homecare locations to the same employment policies, as described herein.

37. During the relevant time period, Defendants used the same hiring process to hire employees for all Friends for Life Homecare locations.

38. During the relevant time period, Defendants used the same timekeeping system for employees out of all Friends for Life Homecare locations.

39. During the relevant time period, Defendants used the same payroll system for

employees out of all Friends for Life Homecare locations.

40. During the relevant time period, Defendants maintained one set of records showing hours worked by employees out of all Friends for Life Homecare locations.

41. The Corporate Defendants have jointly regulated the employment of all persons employed by them, acted directly and indirectly in the companies' interest in relation to the employees, and thus are employers of employees within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

*Defendants Michael Recco and Amy Recco Jointly Oversee the Operations of the Corporate Defendants*

42. Together, Defendants Michael and Amy Recco are and during the relevant time period were responsible for the day-to-day operation and management of the Corporate Defendants.

43. Together, Defendants Michael and Amy Recco are and during the relevant time period were in financial control of all the Corporate Defendants.

44. During the relevant time period, Defendants Michael and Amy Recco had the power to make all significant financial decisions with regard to the Corporate Defendants.

45. During the relevant time period, Defendant Michael Recco had the power to hire employees for all Friends for Life Homecare locations.

46. During the relevant time period, Defendant Amy Recco had the power to hire employees for all Friends for Life Homecare locations.

47. During the relevant time period, Defendant Michael Recco hired employees for all Friends for Life Homecare locations.

48. During the relevant time period, Defendant Amy Recco hired employees for all Friends for Life Homecare locations.

49. During the relevant time period, Defendant Michael Recco had the power to fire employees for all Friends for Life Homecare locations.

50. During the relevant time period, Defendant Amy Recco had the power to fire employees for all Friends for Life Homecare locations.

51. During the relevant time period, Defendant Michael Recco had the power to set the rates of pay for employees for all Friends for Life Homecare locations.

52. During the relevant time period, Defendant Amy Recco had the power to set the rates of pay for employees for all Friends for Life Homecare locations.

53. During the relevant time period, Defendant Michael Recco set the rates of pay for employees for all Friends for Life Homecare locations.

54. During the relevant time period, Defendant Amy Recco set the rates of pay for employees for all Friends for Life Homecare locations.

55. During the relevant time period, Defendant Michael Recco had the power to set the work schedules of employees for all Friends for Life Homecare locations.

56. During the relevant time period, Defendant Amy Recco had the power to set the work schedules of employees for all Friends for Life Homecare locations.

57. During the relevant time period, Defendant Michael Recco set the work schedules of employees for all Friends for Life Homecare locations.

58. During the relevant time period, Defendant Amy Recco set the work schedules of employees for all Friends for Life Homecare locations.

59. During the relevant time period, Defendant Michael Recco had authority to sign checks, including payroll checks, on behalf of the Corporate Defendants.

60. During the relevant time period, Defendant Amy Recco had authority to sign checks, including payroll checks, on behalf of the Corporate Defendants.

61. During the relevant time period, Defendant Michael Recco had authority to supervise employees at and out of all Friends for Life Homecare locations.

62. During the relevant time period, Defendant Amy Recco had authority to supervise employees at and out of all Friends for Life Homecare locations.

63. During the relevant time period, Defendant Michael Recco supervised employees at all Friends for Life Homecare locations.

64. During the relevant time period, Defendant Amy Recco supervised employees at all Friends for Life Homecare locations.

65. For example, the Friends for Life Homecare Instagram account refers to Defendant Amy Recco as "our wonderful boss Amy" in an October 21, 2024 post.

66. Defendant Michael Recco has regulated the employment of all persons he has employed and has acted directly and indirectly in the Corporate Defendants' interests in relation to the employees.

67. Defendant Michael Recco is thus an employer of the Corporate Defendants' employees within the meaning of Section 3(d) of the Act, 29 U.S.C. § 203(d), and is a "person" within the meaning of Section 3(a) of the Act, 29 U.S.C. § 203(a).

68. Defendant Amy Recco has regulated the employment of all persons she has employed and has acted directly and indirectly in the Corporate Defendants' interests in relation to the employees.

69. Defendant Amy Recco is thus an employer of the Corporate Defendants' employees within the meaning of Section 3(d) of the Act, 29 U.S.C. § 203(d), and is a "person" within the

meaning of Section 3(a) of the Act, 29 U.S.C. § 203(a).

## DEFENDANTS' EMPLOYEES AFFECT COMMERCE

70. Defendants employed the employees listed in Exhibit A, as well as other employees not presently known to Plaintiff, as home care aides.

71. Defendants' home care aides are and were domestic service employees because, during the relevant time period, they provided services of a household nature, such as meal preparation, hygiene assistance, errands, household cleaning, and elder care, in private homes.

72. Further, home care aides are domestic service employees as prescribed by 29 C.F.R. Part 552.

73. Employment of persons in domestic service in households affects commerce. 29 U.S.C. § 202(a). Thus, Defendants' domestic service employees are and were covered employees under Section 2(a) of the Act.

## THE CORPORATE DEFENDANTS ARE AN ENTERPRISE ENGAGED IN COMMERCE WITHIN THE MEANING OF THE ACT

74. Together, the Corporate Defendants are an enterprise within the meaning of Section 3(r) of the Act, 29 U.S.C. § 203(r).

75. The Corporate Defendants' business activities are related and performed through common control for a common business purpose.

76. As described herein, the Corporate Defendants engage in the common business purpose of jointly operating a home care agency under one unified brand – Friends for Life Homecare.

77. In pursuing this common business purpose, each Corporate Defendant engages in substantially similar, if not identical, business activities.

78. As described herein, the Corporate Defendants have unified operations.

79. As described herein, the Corporate Defendants' business activities are performed under common control.

80. Throughout the relevant time period, the Corporate Defendants have had an annual gross volume of sales made or business done in an amount not less than $500,000.

81. Throughout the relevant time period, the Corporate Defendants have had domestic service employees handling and using goods or materials that have been moved in or produced for commerce, such as cleaning products, food, personal protective equipment, and medical supplies.

82. Therefore, Defendants' employees have been employed in an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1)(A) of the Act.

## DEFENDANTS' AIDES ARE ECONOMICALLY DEPENDENT ON DEFENDANTS AND ARE EMPLOYEES UNDER THE ACT

83. During the relevant time period, Defendants' aides were economically dependent on Defendants.

84. During the relevant time period, Defendants' aides' work was integral to Defendants' business.

85. During the relevant time period, without the services provided by aides, Defendants would not have been able to provide care services to its clients.

86. Nevertheless, during the relevant time period, Defendants misclassified their home care aides as independent contractors in a scheme designed to avoid paying required overtime premiums to aides who worked more than 40 hours per week.

87. During the relevant time period, Defendants exercised control over the manner and means through which aides perform their work.

88. During the relevant time period, Defendants controlled the day-to-day working

conditions of the aides.

89. For example, during the relevant time period, Defendants assigned aides to work in the homes of Defendants' specific clients.

90. During the relevant time period, Defendants assigned detailed job duties to aides based on the specific clients aides were assigned to.

91. During the relevant time period, Defendants set the schedules for aides based on the specific clients aides were assigned to.

92. During at least part of the relevant time period, Defendants required aides to clock in and clock out using a time-keeping app.

93. During the rest of the relevant time period, Defendants required aides to report their hours to Defendants' office employees over the phone.

94. During the relevant time period, Defendants required aides to provide at least one week's notice before Defendants allowed them to take any time off.

95. During the relevant time period, Defendants monitored aides' work by sending individuals from Defendants' offices to perform at-home assessments of aides' job performance.

96. During the relevant time period, Defendants prohibited aides from contracting directly with any of the patients to which Defendants assigned aides.

97. During the relevant time period, Defendants prohibited aides from subcontracting out their work as aides to other individuals.

98. During the relevant time period, Defendants determined aides' compensation by setting their hourly or daily rates of pay.

99. In some cases, Defendants would tell aides what their hourly or daily rates of pay would be.

100. In other cases, Defendants would not tell aides what their hourly or daily rates of pay would be, but would simply start paying them at rates unilaterally set by Defendants.

101. During the relevant time period, aides typically did not negotiate their rates of pay.

102. During the relevant time period, aides typically were not allowed to negotiate their rates of pay.

103. For example, some aides asked for raises but were told that Defendants would not agree to provide a raise.

104. During the relevant time period, aides had no opportunity to increase their profits or to take a loss based upon skill set.

105. During the relevant time period, aides did not need to complete significant training in order to perform their work for Defendants.

106. In order to work as personal care aides in New York State, aides were required to complete only 40 hours of training.

107. During the relevant time period, aides typically did not work for other employers.

108. During the relevant time period, aides were not registered as independent businesses, and did not advertise their services.

109. During the relevant time period, aides made little or no investment in the equipment or materials required for their work.

110. During the relevant time period, Defendants' relationship with aides were for indefinite periods of time and often lasted more than a year.

111. Thus, the aides are and were, as a matter of economic reality, "employees" of Defendants within the meaning of Section 3(e)(1) of the Act, 29 U.S.C. § 203(e)(1).

## DEFENDANTS FAILED TO PAY PREMIUM PAY FOR OVERTIME HOURS WORKED

112. Defendants have maintained the same or substantially the same unlawful pay practices for aides throughout the relevant time period.

113. Defendants' aides regularly work more than 40 hours each week, and often work 80 hours and sometimes more.

114. Some of Defendants' aides work 24-hour shifts.

115. Some of Defendants' aides work shifts of fewer than 24 hours.

116. Some of Defendants' aides work both 24-hour shifts and shifts of fewer than 24 hours.

117. Defendants pay aides using day rates, hourly rates, or a combination of both.

118. In addition to a day and/or hourly rate, Defendants at times pay aides a small amount of "travel cost" on a per-shift basis, usually around $10-$20. However, this travel cost is not tied to mileage driven or the actual cost of travel for aides. Accordingly, it is part of the aides' regular rates of pay.

119. Regardless of the type of rate used or whether or not Defendants pay "travel cost" in a given week, Defendants regularly fail to pay most aides a proper overtime premium for hours worked over 40 in a workweek.

### *Defendants Failed to Pay Premium Pay for Overtime Hours Worked When Paying Aides a Day Rate*

120. Defendants pay aides a flat day rate, usually between $140-$180, for 24-hour shifts.

121. When aides work 24-hour shifts, Defendants do not track the actual hours worked by aides.

122. Defendants' aides who work 24-hour shifts work at least approximately 13 hours in each 24-hour shift.

123. Defendants' aides regularly work four to seven 24-hour shifts in a single workweek, which results in workweeks substantially longer than 40 hours.

124. In such instances, Defendants pay the same flat day rate, regardless of how many hours aides actually work on a given day or in a given week.

125. By paying a flat day rate without regard to the hours worked, Defendants fail to pay their aides the required overtime compensation for hours worked over 40 per week.

126. For example, during the week ending October 30, 2022, Defendants' records reflect that an aide worked seven 24-hour shifts for a total of at least 91 hours in the week. Defendants' records also reflect that for the same one-week period, Defendants paid the aide a day rate of $140 per day for a total of $980 without any overtime compensation.

127. As another example, during the week ending February 5, 2023, Defendants' records reflect that an aide worked four 24-hour shifts for a total of at least 52 hours in the week. Defendants' records also reflect that for the same one-week period, Defendants paid the aide a day rate of $140 per day for a total of $560 without any overtime compensation.

*Defendants Failed to Pay Premium Pay for Overtime Hours Worked When Paying Aides an Hourly Rate*

128. Defendants pay aides a flat hourly rate, usually between $14-$18, for all hours worked for shifts of fewer than 24 hours, regardless of how many hours aides work in a workweek.

129. By paying aides the same hourly rate for all hours worked, Defendants do not compensate aides at one and one-half times their regular hourly rate for hours worked over forty in a workweek.

130. For example, during the week ending January 15, 2023, Defendants' records reflect that an aide worked a total of 56 hours. Defendants' records also reflect that for the same one-week period, Defendants paid the aide at an hourly rate of $15, for a total of $840 without any

overtime compensation.

131. As another example, during the week ending June 18, 2023, Defendants' records reflect that an aide worked a total of 67 hours. Defendants' records also reflect that for the same one-week period, Defendants paid the aide at an hourly rate of $15, plus $20 in "travel cost" for each shift, for a total of $1,145 without any overtime compensation.

*Defendants Failed to Pay Premium Pay for Overtime Hours Worked When Paying Aides Both a Day Rate and an Hourly Rate*

132. Defendants also at times pay aides both a fixed day rate on some days and an hourly rate on others, thereby further failing to properly aggregate total hours worked to determine proper overtime rates and proper overtime compensation due.

133. For example, during the week ending October 16, 2022, Defendants' records reflect that an aide worked 12 hours in hourly shifts and five 24-hour shifts (at least approximately 13 hours per shift), for a total of at least approximately 77 hours in the week. Defendants' records also reflect that for the same one-week period, Defendants paid the aide at an hourly rate of $15 for 12 hours and at a day rate of $140 for five shifts, and paid the aide an additional $45 for unspecified reasons, for a total of $925 without any overtime compensation.

134. As another example, during the week ending April 16, 2023, Defendants' records reflect that an aide worked 36 hours in hourly shifts and two 24-hour shifts (at least approximately 13 hours per shift), for a total of at least approximately 62 hours in the week. Defendants' records also reflect that for the same one-week period, Defendants paid the aide at an hourly rate of $17 for 36 hours and at a day rate of $175 for two shifts, and paid the aide an additional $16 in "travel cost" for each hourly shift, for a total of $1,010 without any overtime compensation.

**DEFENDANTS FAILED TO MAKE AND MAINTAIN ACCURATE RECORDS**

135. Defendants have maintained the same or substantially the same unlawful

recordkeeping practices during the relevant time period.

136. Defendants have failed to make, keep, and preserve adequate and accurate records of their employees and of the wages, hours, and other conditions of employment as prescribed by the regulations at 29 C.F.R. Part 516.

137. Specifically, Defendants do not maintain and preserve records of actual hours worked by all aides.

138. For example, Defendants do not record the actual hours worked each day and each week by employees who work 24-hour shifts.

**TOLLING AGREEMENT**

139. On or about October 10, 2024, defendants and the Acting Secretary knowingly and voluntarily entered into a Statute of Limitations Tolling Agreement.

140. The Tolling Agreement states that any legal proceeding brought by the Secretary or affected employees following December 19, 2024 shall be deemed to have been filed 72 days prior to the actual filing date.

141. Accordingly, this complaint shall be deemed to have been filed on October 9, 2024 for purposes of computing the running of any statute of limitations or defense related to the timeliness of the filing of this complaint.

**FIRST CAUSE OF ACTION**
**Violation of Sections 7(a) and 15(a)(2) of the FLSA**
**Failure to Pay Overtime**

142. Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, the Acting Secretary adopts and incorporates by reference the allegations in all prior paragraphs.

143. Defendants have violated the provisions of Sections 7 and 15(a)(2) of the Act by employing employees in domestic service and in an enterprise engaged in commerce or in the

production of goods for commerce for workweeks longer than forty hours without compensating the employees for their employment in excess of forty hours at rates not less than one and one-half times the regular rates at which they were employed, as required by Section 7 of the Act.

144. Therefore, Defendants are liable for unpaid overtime compensation and an equal amount in liquidated damages under Section 16(c) of the Act or, in the event liquidated damages are not awarded, unpaid overtime compensation and prejudgment interest under Section 17 of the Act.

**SECOND CAUSE OF ACTION**
**Violation of Sections 11(c) and 15(a)(5) of the FLSA**
**Failure to Make, Keep, and Preserve Adequate and Accurate Records**

145. Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, the Acting Secretary adopts and incorporates by reference the allegations in all prior paragraphs.

146. Defendants have violated the provisions of Sections 11(c) and 15(a)(5) of the Act, in that Defendants failed to make, keep, and preserve adequate and accurate records of their employees and of the wages, hours, and other conditions of employment as prescribed by the Regulations at 29 C.F.R. Part 516.

147. More specifically, Defendants failed to maintain or preserve records of actual hours worked for all employees.

**WHEREFORE**, cause having been shown, Plaintiff respectfully requests that this Court enter judgment against Defendants as follows:

1. An injunction issued pursuant to Section 17 of the Act permanently restraining Defendants, their officers, agents, servants, employees, and those persons in active concert or participation with Defendants, from violating the provisions of Sections 7, 11(c), 15(a)(2), and 15(a)(5) of the Act;

2. An order pursuant to Section 16(c) of the Act finding Defendants liable for unpaid overtime compensation found due Defendants' employees listed on the attached Exhibit A and an equal amount of liquidated damages (additional back wage compensation and liquidated damages may be owed to certain employees presently unknown to Plaintiff for the period covered by this Complaint); or

3. In the event liquidated damages are not awarded, for an injunction issued pursuant to Section 17 of the Act restraining Defendants, their officers, agents, employees, and those persons in active concert or participation with Defendants, from withholding the amount of unpaid overtime compensation found due Defendants' employees, and prejudgment interest computed at the underpayment rate established by the Secretary of Treasury pursuant to 26 U.S.C. § 6621;

4. An order compelling Defendants to reimburse the Acting Secretary for the costs of this action; and

5. An order granting such other relief as the Court may deem necessary or appropriate.

DATED: December 20, 2024

SEEMA NANDA
Solicitor of Labor

JEFFREY S. ROGOFF
Regional Solicitor

BY: /s/ Amanda M. Wilmsen
AMANDA M. WILMSEN
Trial Attorney

U.S. Department of Labor,
*Attorneys for Plaintiff Acting Secretary of Labor*

U.S. Department of Labor
Office of the Regional Solicitor
201 Varick Street, Room 983
New York, NY 10014
(646) 264-3691
(646) 264-3660 (fax)
wilmsen.amanda.m@dol.gov
NY-SOL-ECF@dol.gov

**EXHIBIT A**

Joan Allen-Dumay
Shenaire Alston
Bibi Amina
Cheryl Anderson
Onika Archer
Sebrina Atkinson
Zoya Bacchus
Maureen Baird
Juliet Barnett
Kerryann Barnett
Kerryann Barrett
Talika Barrette
Esmine M Barron
Roberta Beaton
Juanita Beckford-Gray
Samantha Bender
Ditta Biggs
Gloria Biggs
Donna Bishop
Felichia Blackwood
Beverly Blair-Comrie
Antionette Brown
Claudia Brown
Kadie Brown-Grant
Margret Bryan
Maureen Bryan
Sonia Bryan
Hemwattie Budhoo
Predharshanie Budhu
Alissa Cameron
Clarecia Campbell
Diana Campbell
Evadine Campbell
Sandrine Caputo
Noelissa Caraballo
Patricia Castle
Donna Chance
Rose Chaverria
Pauline Clemenson

Audrey Clemmings
Nicola Coleman
Marva Cooper
Teneisha Cowell
Jennifer Crosdale
Pernella Evalyn Cummings
Nikesha Cunningham
Pearl Cuviije
Shaneil Daily
Shauna Daley
Anthony Darville
Kerlene Davis
Simone Davis
Hyacinth Dawkins
Karen Dawkins
Sakina Dennis
Joan Dixon
Lelieth Downs
Marcia D Duncan
Deloris Dunn
Patricia Dyer
Angella East
Dianne Ebanks-Kirby
Shuseano Ellis
Ruth Elvy
Aldene Farmer
Samantha Francis
Donna Frazer
Janet Fullerton
Jestina M Gemmison
Jermoy George
Mercella German
Ettinia J Gilzine
Marvalyn Girdey
Feonia Glaves
Mildred Gordon
Elaine Graham-Ashby
Jolly Grant
Latrena Gray
Lateshia Gregory

Marva Grey
Franklin E Hall
Jennifer Hemans
Denise Hendricks
Alma Henry
Sondra Hubbard
Cheryl Hunt
Tameka Hutchinson
Joyce Hyatt
Olivette Jackson
Yvonne Jaddoo
Mary John
Kathleen Johnson
Kimesha Keen-Mendez
Lora Kelly-Hutchinson
Janice Kerr
Celene J Knight
Kyomey Knight
Sonia Leach-Mckenzie
Gayla Ledgister-Wilson
Sandradee Lee
Avis P Lemard
Sharon Y Lemard
Nicksha Livermore
Roundel Liverpool
Roundell Liverpool
Elizabeth Lumelino
Dawn Maragh
Deborah Mathews
Deborah Matthews
Shanique Mattis
Judith McCormack
Sharon McDonald
Tracey McGann
Latoya McKenzie
Shery-Kay McKinley
Shamora McKoy
Tanika McKoy
Pauline McLeish
Telletia McNeil

Tracy McPherson
Sandra Mesquita
Hortense Mohammed
Loy Montaque
Kayrene Monteith
Treisha Moore
Esmina Morgan
Eugenia Morris
Jascene Morrison
Renee Morrison
Priscella Mowatt
Kaysen Myers
Sheneeza Naraine
Elizabeth Nixon
Kenny Notice-Reid
Norma Nourine
Beverley A Oduola
Kwasi Ofori-Koranteng
Zelpha Palmer
Bibi Papas
Julie A Parkes
Laurel Parkes
Ionie Patrick
Herma Pitter
Nankumarie Pooran
Olufunmilola Popoola
Keneish Powell
Joyce Prince
Jennifer Ramasar
Adreine Reid
Dawn Reid
Beverly Rennalls
Sarah Reynolds
Anette Rhoden
Dorien Rhoden
Shernette Ricketts
Blessing Rivera
Melinda Roach
Ingrid Robert
Daisy Roberts

Shawna-Kay Roberts
Donna Robinson
Nicola C Robinson
Phyllis Rose
Barbara Ruben
Joan Sampson
Karen Sampson
Etta Scarlett
Myrtle M Scott-Robinson
Candacia Sears
Coreen Sewell
Mavine Shackleford
Una Shawsmith
Minerva Sime
Delores Simpson
Suzzette Sinclair
Jennifer Singh
Aretha Skeete
Hanna Skyers
Deborah Smartt
Brinell Smith
Daniese Smith
Elfreda Smith
Georgina Smith
Joan Smith
Keneshia Smith
Kimberly Smith
Stacy-Ann Smith
Marcia Solomon
Marcia Sommerville
Drupattie Somwaru
Sharon Spencer
Janet Sterling
Beverly Thomas
Yanique Thomas
Diana Thompson
Donna Tomlinson
Odessa Toussaint
Natasha Ugashwar
Nardia Walcott

Kaydian Walters
Shanice Walters
Clarice Walters-Caesar
Cynthia S Watson
Sybil Waugh
Queenie White-Todd
Myrtle Wiley
Jordiene Williams
Julian Williams
Kellian Williams
Letoyah Williams
Suzette Williams
Corinne Wright
Lorna Wright
Montia Young